# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### SOUTHERN DIVISION
#### AT PIKEVILLE

| | |
|---|---|
| **RANDY WAYNE STURGILL,** | **CIVIL NO. 7:16-CV-146-KKC** |
|     **Plaintiff,** | |
| **v.** | <u>**OPINION AND ORDER**</u> |
| **NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY,** | |
|     **Defendant.** | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court for consideration of cross-motions for summary judgment filed by Plaintiff Randy Wayne Sturgill (DE 14) and Defendant Nancy A. Berryhill, Acting Commissioner of Social Security (DE 16). Sturgill brought this action under Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Social Security Administration ("Commissioner") denying his claim for Disability Insurance Benefits ("DIB"), as provided under Titles II of the Social Security Act ("the Act"). The Court, having reviewed the record, will affirm the Commissioner's decision.

## I. Overview of the Process

To determine whether a claimant has a compensable disability under the Social Security Act, the administrative law judge ("ALJ") applies a five step sequential process. 20 C.F.R. § 404.1520(a)(1), (4); *see also Miller v. Comm'r of Soc. Sec.*, 81 F.3d 825, 835 n.6 (6th Cir. 2016) (describing the five-step evaluation process). The five steps, in summary, are:

> *Step 1:* If the claimant is doing substantial gainful activity, the claimant is not disabled.

*Step 2:* If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

*Step 3:* If the claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his or her impairment meets or equals a listed impairment, the claimant is presumed disabled without further inquiry.

*Step 4:* If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

*Step 5:* If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x. 162, 169 (6th Cir. 2016) (citing *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009)).

If, at any step in the process, the ALJ concludes that the claimant is or is not disabled, the ALJ can then complete the "determination or decision and [the ALJ] do[es] not go on to the next step." 20 C.F.R. § 404.1520(a)(4). In the first four steps of the process the claimant bears the burden of proof. *Sorrell*, 656 F. App'x. at 169 (quoting *Jones v. Comm'r of Soc. Sec.* 336 F.3d 469, 474 (6th Cir. 2003)). If the claim proceeds to step five, however, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . and vocational profile." *Id.* (internal citations omitted); 20 C.F.R. § 404.1520(g)(1).

## II. Factual and Procedural Background

### A. *Factual Background*

Plaintiff Randy Wayne Sturgill was born in 1971. (Administrative Record ("AR") 50). He is divorced with one child and lives alone, but has a girlfriend. (AR 50-61, 61). He has an eleventh grade education and dropped out of school to begin working in the coal mines, which he did for nearly twenty-seven years. (AR 51-53). Working on average sixty hours a week,

Sturgill performed a number of jobs operating different types of equipment during his long career in the mines. (AR 52, 64). His last date of reported work was September 7, 2012 when his neck and shoulder were injured in a rock fall. (AR 65). As a result of the injury, Sturgill underwent neck surgery, but his spine has not yet fully fused. (AR 65).

Sturgill applied for Disability Insurance Benefits on June 4, 2013. (AR 162-66). In his disability report, Sturgill claimed that he was unable to work due to a broken neck, shoulder injuries, high blood pressure and cholesterol, sleep apnea, and thyroid problems. (AR 187). Sturgill's application was denied initially and on reconsideration. (AR 87, 111). He then filed a timely request for a hearing before an ALJ (AR 118-19).

A hearing was conducted by ALJ Don C. Paris on February 3, 2015. (AR 46). Sturgill attended the hearing via videoconference, accompanied by his attorney, and testified on his own behalf. Laura Whitten Lykins, an impartial vocational expert, also appeared and testified. (AR 46-47). After the hearing, the ALJ issued a written opinion on February 13, 2015 denying Sturgill benefits. (AR 25-27). Sturgill now appeals that decision to this Court.

*B. The Administrative Decision*

The ALJ applied the traditional five-step sequential analysis promulgated by the Commissioner, *see* 20 C.F.R. § 404.1520, and found that Gerald's claim failed at step five. At step one, the ALJ found that Sturgill had not engaged in substantial gainful activity since September 7, 2012, the alleged disability onset date. At step two, the ALJ found that Sturgill suffered from two severe impairments: cervical degenerative disc disease and bilateral shoulder pain and rotator cuff tears, status post left rotator cuff repair. (AR 30). At step three, the ALJ found that Sturgill did not have an impairment, or a combination thereof, that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1. (AR 30-31). Next, the ALJ found that Sturgill retained, based on all of his impairments, the RFC:

to perform light work as defined in 20 CFR 404.1567(b) with the following limitations. The claimant can lift/carry 20 pounds occasionally, and 10 pounds frequently. He can stand/walk six hours, and six hours, out of an eight-hour workday. He occasionally can push and pull with his upper extremities. He occasionally can stoop, kneel, crouch, crawl, and climb ramps and stairs. He never should climb ladders or ropes. He can performed limited overhead reaching with his upper extremities.

(AR 31). At step four, the ALJ accepted the testimony of the vocational expert, and found that he was unable to perform his past work as a coal miner and battery hauler/loader. (AR 37). Finally, at step five, the ALJ considered Sturgill's age, education, work experience, and RFC, in conjunction with the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, App. 2, and found that there were a significant number of jobs in the national economy that he could performed. More specifically, the ALJ determined that Sturgill could work as a bench assembler, in packing and sorting, or in weighing and measuring. (AR 38). Accordingly, the ALJ found that Sturgill was not disabled from September 7, 2012 through February 13, 2015. (AR 39).

The ALJ's decision became the final decision of the Commissioner when the Appeals Council subsequently denied Sturgill's request for review. (AR 1-6); *see* 20 C.F.R. § 422.210(a). Sturgill has exhausted his administrative remedies and filed a timely appeal in this Court. The parties have filed cross-motions for summary judgment, and this case is now ripe for review under 42 U.S.C. § 405(g).

### III. Standard of Review

Under the Social Security Act, the Court conducts a limited review of the Commissioner's decision. 42 U.S.C. § 405(g). The Court may only evaluate whether the ALJ applied the correct legal standard and made factual findings that are supported by substantial evidence in the record. *Id.*; *see also Rabbers*, 582 F.3d at 651. Substantial evidence means "more than a scintilla of evidence but less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of*

*Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). In assessing the ALJ's decision, the Court cannot "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Id.*; *see also Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). If the Commissioner's decision is supported by substantial evidence, this Court must affirm that decision even if there is substantial evidence in the record that supports an opposite conclusion. *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (quoting *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005)).

## IV. Analysis

Sturgill challenges the ALJ's decision on three grounds. At step three, he claims that the ALJ erred in finding his impairments did not meet a listing in 20 C.F.R. Part 404, Subpart P, App. 1. Next, he claims that the ALJ erred in weighing the opinions of the medical sources when assessing Sturgill's RFC. And finally, at step five, he argues that the ALJ failed to qualify the vocational expert and erred by accepting her unreliable testimony as to whether there existed a significant number of jobs in the national economy that Sturgill could perform. These arguments are considered below.

### A. Step Three: Listed Impairments

Sturgill first argues that the ALJ erred in finding, at step three, that his injuries did not meet an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. In his motion for summary judgment, Sturgill contends that the ALJ failed to consider whether his cervical degenerative disc disease met Listing 1.05. That Listing applies to claimants who have undergone amputations of hands or lower extremities. *Id.* at Pt. A, § 1.05. Sturgill does not claim to have undergone an amputation and therefore the ALJ correctly did not discuss or apply Listing 1.05.

In his reply brief, Sturgill concedes that his motion incorrectly referred to an outdated version of the Listings.[1] He claims more generally that the ALJ failed to consider that his neck had not fused following surgery under Chapter 1 of the Listing Impairments. He does not, however, cite specifically to any of the eight Listings in Chapter 1. To the extent that Sturgill claims that the Commissioner improperly evaluated his condition under Listings 1.02 or 1.04, that arguments fails. The ALJ's decision that these Listings were not met was supported by substantial evidence. Listing 1.04 requires " [e]vidence of nerve root compression . . . or [s]pinal arachnoiditis . . . or [l]umbar spinal stenosis . . . ." 20 C.F.R. Part 404, Subpart P, App. 1, Pt. A, § 1.04. Listing 1.02. Sturgill has not identified any evidence that he suffered these symptoms. Listing 1.02 is met when the claimant suffers from a "gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion" with shoulder involvement " resulting in [an] inability to perform fine and gross movements effectively . . . ." *Id.* at § 1.02(B). Inability to perform fine and gross movements effectively under Listing 1.02 "means an extreme loss of function of both upper extremities." *Id.* at § 1.00(B)(2)(c). Dr. Helen O'Donnell, who performed Sturgill's consultative examination, found that he had a largely normal range of motion and that "[h]e could perform fine and gross motor manipulation activities bilaterally, but he should avoid using his arms above shoulder level." (AR 34; *see* AR 423, 426-27). He also claims that controlling opinion of Dr. Bean that his neck was unhealed after his cervical fusion requires a finding that he meets a Chapter 1 Listing. This opinion,

---

[1] The Commissioner helpfully explains that Listing 1.04 (spine disorders) replaced Listing 1.05 (formerly vertebrogenic disorders) in 2002. *See* Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58,010, 58,010-11 (effective date), 58,017-18 (explaining that Listing 1.04A corresponds "most closely" with former Listing 1.05C).

however, does not meet either Listing 1.02 or 1.04. Thus, substantial evidence supported the ALJ's finding that Sturgill's disabilities did not meet a Listing.

### B. Residual Functional Capacity

Next, Sturgill argues that, in assessing his RFC and finding that he could perform light work, the ALJ erred in weighing the medical source opinions and ignored certain statements made by those sources. Sturgill's first objection to the ALJ's RFC finding is that, despite giving controlling weight to his treating neurosurgeon Dr. James Bean, the ALJ did not find that he was "unable to work" as Dr. Bean opined in a May 2014 note. (AR 845). Second, he claims the ALJ ignored exertional and non-exertional restriction opinions given Dr. Helen O'Donnell, to whom the ALJ afforded great weight. Third, he argues the ALJ erred in giving significant weight to non-examining state agency medical consultant Dr. Jack Reed. And fourth, he claims that the ALJ failed to consider the opinions of Dr. John H. Phillip's, his treating surgeon, and Dr. Frederick Terry, his pain management physician. He also claims that the ALJ erred by not incorporating a limitation based on his need to miss work for doctor's appointments and physical therapy.

The Social Security regulations recognize three types of medical sources: nonexamining sources, nontreating (but examining) sources, and treating sources. 20 C.F.R. § 404.1527; *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Under the "Treating-Source Rule," the opinion of a treating physician is generally entitled to the most weight. *See Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x. 267, 273 (6th Cir. 2015). If a treating source is not given controlling weight, the ALJ is procedurally required to give "good reasons" for discounting the opinion that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007)). When considering non-controlling sources, the

ALJ must evaluate the following factors in deciding the appropriate weight due: whether the source examined the claimant; the length, frequency, nature, and extent of the treatment relationship; the explanation and supporting evidence presented by the source; consistency of the opinion with the record; specialization; and other factors which support or contradict the opinion. 20 C.F.R. § 404.1527(c). Certain issues, such as opinions that a claimant is disabled, whether an impairments meets or equals a Listing, RFC, and the application of vocational factors, are "reserved to the Commissioner because they are administrative findings that are dispositive of a case." *Id.* at § 404.1527(d).

### 1. *Dr. Bean*

The ALJ correctly disregarded Dr. Bean's opinion that Sturgill was unable to work as an opinion on the issue of disability reserved to the Commissioner. *Id.* at § 404.1527(d)(1). The Commissioner's regulations explicitly reference such a statement as non-dispositive. *Id.* ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); *Dutkiewicz v. Comm'r of Soc. Sec.*, 663 F. App'x 430, 432 (6th Cir. 2016) ("'[Unable to work' is not a medical opinion that may be given controlling weight because it is an opinion on an issue reserved to the Commissioner."). Additionally, the ALJ's determination that this opinion applied only to his prior work as a coal miner was supported by substantial evidence on the record. Dr. Bean's patient notes from the same appointment stated that Sturgill "has neck pain which prevents him from returning to full, unrestricted work. I rate him at a light level duty ~20 pounds maximum lifting, no repetitive lifting over 10 pounds, and no working with head continually flexed or extended." (AR 849). These notes clearly show that Dr. Bean's note meant that he was unable to return to his prior work as a coal miner. [2]

---

[2] To the extent that Sturgill argues other limitations identified by Dr. Bean were not reflected in his RFC, that argument is waived because Sturgill has not identified specific limitations which were excluded. *See McPherson*

*2. Dr. O'Donnell*

Sturgill's claim that the RFC should have included additional restrictions identified by Dr. Helen O'Donnell, a state agency medical consultant, is also unavailing. Dr. O'Donnell opined that Sturgill "has the ability to perform only activities involving sitting which allow change of position and appropriate breaks; work would have to be at the table level to avoid use of the arms above shoulder level." (AR 424). The ALJ gave Dr. O'Donnell's opinion that Sturgill had "the ability to work at less than a full range of light exertion activities" great weight, but did not adopt her full restrictions. (AR 37). This decision was reasonable because other evidence on the record contradicted Dr. O'Donnell's restrictions. For example, examinations of Sturgill showed normal gait and no difficulty walking (AR 423, 876, 878, 880, 882, 884) and Dr. Bean, who was given controlling weight, concluded that Sturgill's work capability was at a light level with maximum 20 pounds lifting. (AR 849). Neither Dr. Phillips nor Dr. Terry noted similar work restrictions. A lack of physical restrictions constitutes substantial evidence for a finding of non-disability. *See Longworth v. Comm'r Soc. Sec. Admin*, 402 F.3d 591, 596 (6th Cir. 2005) (quoting *Maher v. Sec'y of Health & Human Servs.*, 898 F.2d 1106, 1109 (6th Cir. 1989)). It was proper for the ALJ to reject this portion of Dr. O'Donnell's opinion when it was inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4).

*3. Dr. Reed*

Sturgill also objects to the ALJ's decision to give significant weight to Dr. Jack Reed, a non-examining state agency medical consultant. He claims that Dr. Reed's opinion should be entitled to less weight because he only reviewed Dr. O'Donnell's exam, not his

---

*v. Kelsey*, 125 F.3d 989 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (quoting *Citizens Awareness Network, Inc. v. U.S. Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-94 (1st Cir. 1995)).

9

treating physician's records, and therefore was unaware that Sturgill's cervical fusion surgery was unsuccessful. In assessing Dr. Reed's opinion, the ALJ properly applied the factors required by 20 C.F.R. § 404.1527 and found that the opinion was consistent with the overall evidence (AR 37). Notably, Sturgill does not note any disagreement with Dr. Reed's opinion; he only objects to the ALJ's assignment of weight. His concern that Dr. Reed was unaware of his failed neck surgery is immaterial since the ALJ accepted that Sturgill's neck had not fused. (AR 36).

### 4. Dr. Phillips and Dr. Terry

Sturgill next claims that the ALJ failed to assess the opinions of Dr. John H. Phillips, who performed his rotator cuff surgery, and Dr. Frederick Terry, his pain management physician. While the ALJ extensively discussed the doctor's opinions in his written decision, (AR 33, 35-36), he did not assign them specific weights, (AR 37). Sturgill claims that, because these doctors were treating sources, the ALJ erred by not giving their opinions controlling weight or for not giving "good reasons" for discounting their opinion. This argument fails for two reasons. First, it does not appear that records from the examination performed by Dr. Phillips and Dr. Terry were medical opinions, as defined by the Commissioner, because they did not discuss functional limitations. Medical opinions are "statements . . . that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The reports by Dr. Phillips and Terry do not constitute medical opinions because they consist merely of objective medical evidence that was set out and fully considered by the ALJ in his written decision. *See Dunlap v. Comm'r of Soc. Sec.*, 509 F. App'x 472, 476 (6th Cir. 2012) (finding a doctor's "report cannot constitute a medical opinion, because it consists primarily of a restatement, often verbatim, of the underlying

evidence contained in [claimant's] medical records—evidence that the administrative law judge fully considered and set out in his decision."). Neither doctor indicated that Sturgill had any functional limitations or work restrictions due to his conditions. Second, even if the records from Dr. Phillips and Dr. Terry contained medical opinions, the ALJ's failure to assign them weight or provide good reasons for not giving them controlling weight was harmless error because the ALJ's RFC was consistent with their medical evaluations. *Wilson v. Comm'r of Soc. Sec.*, 373 F.3d 541, 547 (6th Cir. 2004). Sturgill's objection is wholly procedural. He has not identified any portion of Dr. Phillips or Dr. Terry's reports that is inconsistent with or would have altered his RFC.

### 5. *Missed Work*

Sturgill's final objection to the ALJ's RFC determination is that it did not incorporate a limitation for Sturgill's need to miss work for doctor's appointments and physical therapy. This asserted limitation arises from questioning of the vocational expert by Sturgill's counsel, who asked if Sturgill "were required, because of his need to attend doctor's appointments and attend physical therapy, to miss two or three days a month, are there any jobs that can accommodate that restriction?" (AR 74). The VE answered no, and that such a restriction would preclude all work in the competitive economy. The ALJ, however, did not fail to incorporate this limitation into the RFC because the medical evidence did not support such a finding. The record showed that Sturgill's appointments lasted less than an hour, and therefore did not require missing full days of work. (AR 313, 334, 397). Because Sturgill did not need to miss full days of work the ALJ properly determined that this limitation should not be included. *See Barnett v. Apfel*, 231 F.3d 687, 691 (10th Cir. 2000) (holding "the ALJ did not err by failing to consider plaintiff's absenteeism" when "plaintiff's current extrapolation of how many days she must have missed . . . assumes she was required to miss entire days of work for each appointment.").

*C. Step Five: The Vocational Expert's Testimony*

Sturgill's final claim is that the ALJ erred in accepting the testimony of the vocational expert ("VE") at step five. He alleges two errors. First, that the ALJ failed to qualify the VE and, second, that the VE's testimony was unreliable because it conflicted with the opinions of Dr. Bean and Dr. O'Donnell.

Sturgill's claim that the ALJ failed to qualify the VE is not borne out by the record. Prior to his hearing, Sturgill was informed that "[a] VE will testify at your hearing. You will be able to communicate with the expert. You have a right to review the claim file. If you have not already reviewed the file or arranged to do so, please call this office . . . ." (AR 130). Sturgill objects to the fact that he was first informed that the VE would be Ralph M. Crystal, but a different VE, Laura Whitten Lykins, ultimately testified at his hearing. But Sturgill presents no authority showing that this was an error. Moreover, even assuming this was an error, Sturgill was not prejudiced. Sturgill's counsel was permitted to question Lykins until he had "no other questions." (AR 75). Sturgill's counsel did not object to the appearance of Lykins as the VE and did not raise concerns about her qualifications when questioning her. Sturgill also claims that Lykins qualifications are absent from the record. That is false; Lykins resume was admitted properly entered on the record after obtaining her testimony. (AR 154-55); *see* Hearings, Appeals, and Litigation Law (HALLEX) §§ I-2-1-31(B)(2).

Sturgill's claim that the VE's testimony is unreliable also fails. He contends that the first two jobs identified by the VE—bench assembler and packaging and sorting—require frequent use of both hands in all directions, while the ALJ's hypothetical limited his ability for overhead use of his hands. Sturgill, however, does not object to the third job identified by the VE, weighing and measuring inspector, of which 155,500 jobs exist in the national economy. (AR 38, 73). Thus, even if the Court were to eliminate the first two

jobs identified by the VE, there would still be a significant number of jobs available in the national economy which Sturgill could perform. *See Troxal v. Comm'r of Soc. Sec.*, 113 F. App'x 80, 82 (6th Cir. 2004) (rejecting claimant's argument that the VE's testimony was inconsistent with certain jobs where "even if all of the disputed jobs were eliminated" there were a significant number of jobs available in the national economy).

## V. Conclusion

For the reasons set forth above, the Court **HEREBY ORDERS**:

1. Plaintiff's motion for summary judgment (DE 14) is **DENIED**;

2. the Commissioner's motion for summary judgment (DE 16) is **GRANTED**;

3. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g) as it was supported by substantial evidence and was decided by proper legal standards; and

4. A judgment consistent with this Opinion & Order will be entered contemporaneously.

Dated March 26, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY